Kent, J.,
delivered the opinion of the court. Two questions have arisen upon this case.-
1. Whether the sentence of the admiralty court pre-
cludes all further inquiry respecting the neutrality of the property. ' ■ • > '
2. If it does not, then whether the testimony offered appears to warrant the -sentence of condemnation at Jamaica.
I shall confine my self to the consideration of the first question, because, in my opinion, it will govern and determine the case.
It is a clear and settled principle of law, that the sentence of a court of competent jurisdiction, as to the direct point under decision, is conclusive upon all other courts of the state within whose limits it is pronounced.-
Even foreign decrees, without sustaining a claim, or dis: - missing it, are, from a regard to utility, and ex [*18] comitate, ^generally received and held binding by the regular tribunals of all other nations, in which the administration of justice is orderly and civilized. (Mosely, *19 1." Str. 733. 1 Rep. 258, 260. 4 Term, 185, 192. 2 Brsk. Inst. 735. 2 Kaimes’ Eq. 365, 376.)
, But the sentences of foreign courts of admiralty are especially received as binding, because they proceed upon general principles of the law of nations, applicable to all suitors, and of universal extent and reception. As these courts are qll governed by one and the same law, equally known to every country, and equally open to all the world, all persons arp, therefore, concluded by their sentences, in cases within íhpir jurisdiction. (Doug. 610, 614, 615, 617. 3 Term, 330. 2 Kaimes, 376.) We find, accordingly, that the English courts, as early as the reign of Charles II, {Hughs, v. Cornelius et al., Raym. 473. 2 Show. 242,) regarded the decision of the French admiralty in a question of prize, as conclusive upon them, although, at that time, England was a neutral, and France a belligerent power; and the judges observed, that sentences in courts of admiralty ought to bind generally, according to the jus gentium.
Lord Holt more than once recognized this law, and gave it the sanction of his name. (2 Lord Raym. 893, 935. 1 Show. 6. Garth. 31.)
In modern times, when the law of nations and commercial law have been better understood, and more correctly defined, the doctrine,, that sentences of .foreign admiralties were conclusive, has been admitted in the fullest latitude, and the English court of K. B. has repeatedly decided, that condemnations in a foreign admiralty, as enemy’s property, of property warranted neutral, were ■ conclusive evidence against the insured of a breach of his warranty. (Bernadi v. Motteaux, Doug. 575. Barzillay v. Lewis, De Souza v. Ewer, Saloucci v. Woodmason, and Mayne v. Walter, reported in Park.) These several decisions, whilst they incontrovertibly establish the doctrine, that if no special ground of condemnation appears, *and the property [*19] is condemned generally, as enemy-property, or as good and lawful prize, 'other courts are bound to consider the decree as decisive evidence, that the property was hot neutral; yet they -do, at the same time, admit, that if the foreign sentence be altogether ambiguous, evidence will be *20 let in to explain, so if the sentence be'unjust on the face of it, and reasons are given for it which are manifestly illegal, and against the law of nations, other courts have a right .to judge of those reasons, and to determine upon their validity, and this was the amount of the decision of this court, in the case of Smith v. Murray & Mumford, in January, term, 1797.
The English law, thus understood and explained, I consider as no novel doctrine, but a part of the common law of the land. It is, indeed, the prevailing usage in most countries, whose jurisprudence is enlightened, and whose administration is regular. It could not, indeed, exist in the-civil law, because the whole known world was subject to the Roman empire; but in countries where the civil law has been adopted and modified the same principle prevails, and a person condemned by the sentence of a ¡foreign court, confessedly competent to the case, can have no redress, but by a court which has power to reverse the decree.
The sentence of the admiralty court at Jamaica, cannot truly be said to have been res inter alios. The assured, in the present case, was a party to the suit instituted, and to the condemnation had there, and he applies here to have the same question which was agitated there, and which was decided against him, tried anew : namely, whether his property, which he warranted to be American, had the requisite insignia to entitle it to the privilege of neutrality.
I am, accordingly, of opinion, that the sentence of condemnation being direct, so as to induce a necessary conclusion, that neutral or enemy property was the point in issue [*20] and decided, and containing nothing which appears *to be contrary to the law of nations, is decisive against the plaintiffs and that judgment ought‘to be rendered for the defendant.
Radcliff, J. not having heard the argument in the cause,, gave no opinion.
Judgment for the defendant.'